## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KELLY K. HARTEL and ROBERT L. HARTEL, JR., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 23-1629 |
| BEAZER EAST, INC., in its own right and as a successor in interest to Koppers Company, Inc., and other related companies including Beazer USA, Inc. and Beazer, PLC.; INDSPEC CHEMICAL CORPORATION; INTERSTATE CHEMICAL COMPANY, INC., KOPPERS, INC.; OCCIDENTAL CHEMICAL CORPORATION; and OCCIDENTAL PETROLEUM CORPORATION, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

Presently before the Court is the Motion to Remand and brief in support (Docket Nos. 6, 7) filed by Plaintiffs Kelly K. Hartel ("Kelly Hartel") and Robert L. Hartel, Jr. ("Robert Hartel") (collectively, "Plaintiffs"), the response in opposition (Docket No. 14) filed by Defendants Occidental Chemical Corporation ("OCC") and INDSPEC Chemical Corporation ("INDSPEC") and joined in by other Defendants, and Plaintiffs' reply (Docket No. 21). For the reasons set forth herein, Plaintiffs' motion will be granted.

### I.   BACKGROUND

This lawsuit, originally filed in the Court of Common Pleas of Butler County, Pennsylvania, alleges that Plaintiffs were exposed over a period of years to various toxic airborne emissions from a chemical plant located in Petrolia, Butler County, Pennsylvania (the "Petrolia

Facility").[1]  (Docket No. 1-1, ¶¶ 32-34).  According to Plaintiffs' Complaint, beginning in 1983, Kelly Hartel was exposed to toxic chemicals, dioxins, dibenzofurans, and other harmful materials being emitted from the Petrolia Facility, which was located near her schools and home.  (*Id.* ¶ 33). Plaintiffs, who are husband and wife, currently reside in Petrolia, Pennsylvania, and they further allege that from the time they purchased their home in 1997 through 2017, they were exposed to these same chemicals.  (*Id.* ¶¶ 1, 34).  Plaintiffs aver that as a result of such exposure, Kelly Hartel developed Graves Disease and Hashimoto's Disease, and Robert Hartel has suffered a loss of consortium.  (*Id.* ¶¶ 49, 55, 174).

In addition to Defendants OCC and INDSPEC, the Complaint also names as Defendants Beazer East, Inc., Interstate Chemical Company, Inc., Koppers, Inc., and Occidental Petroleum Corporation (collectively, "Defendants").  (*Id.*  ¶¶ 3-8).  Plaintiffs allege that five of the named Defendants owned and/or operated the Petrolia Facility from the early 1940's until the plant ceased operation in 2017, and that INDSPEC currently owns the Petrolia Facility.  (*Id.* ¶¶ 22, 32).

Plaintiffs' Complaint alleges sixteen Counts, all under Pennsylvania law:  (I) negligence, (II) gross negligence, (III) gross negligence/reckless conduct, (IV) fraudulent concealment, (V) fraudulent misrepresentation, (VI-VII) negligence per se, (VIII-X) strict liability, (XI) private nuisance, (XII) battery, (XIII) trespass, (XIV) loss of consortium, (XV) medical monitoring, and (XVI) exemplary and punitive damages.  (Docket No. 1-1).  Defendants INDSPEC and OCC removed the lawsuit to this Court, asserting that the Court has subject matter jurisdiction over this action because it involves a question of federal law, in connection with the federal Clean Air Act, within this Court's original jurisdiction under 28 U.S.C. § 1331.  (Docket No. 1).  Plaintiffs

---

[1]    The Court's brief summary of the factual background of this case is derived from the allegations set forth in Plaintiffs' Complaint.  (Docket No. 1-1).

subsequently filed their Motion to Remand this action, which has been fully briefed by the parties and is ripe for decision by the Court.[2]

## II.    DISCUSSION

### A.    Regulatory Background[3]

Defendants argue that this action involves a question of federal law under the Clean Air Act, 42 U.S.C. § 7401 *et seq.* (the "CAA"), which is "a comprehensive federal law that regulates air emissions under the auspices of the United States Environmental Protection Agency" (the "EPA").  (Docket No. 14 at 6 (citing *Bell v. Cheswick Generating Station*, 734 F.3d 188, 190 (3d Cir. 2013)).  Under the CAA, the EPA is responsible for regulating the emission of hazardous air pollutants, *see* 42 U.S.C. § 7412, and establishing National Ambient Air Quality Standards ("NAAQS") that specify the maximum permissible concentration of certain pollutants in the ambient air.  *See Bell*, 734 F.3d at 190 (citing 42 U.S.C. § 7409(b)(1)).  However, the EPA itself generally does not regulate individual sources of such emissions, and instead the authorized states are responsible for ensuring compliance with NAAQS.  *See id.* (citing 42 U.S.C. § 7410(a)(1)).  Accordingly, "each state is required to create and submit to the EPA a State Implementation Plan ('SIP') which provides for implementation, maintenance, and enforcement of NAAQS within the state."  *Id.* (citing 42 U.S.C. § 7410(a)(1)).  "All SIPs must be submitted to the EPA for approval before they become final, and once a SIP is approved, its requirements become federal law and are fully enforceable in federal court."  *Id.* (internal quotation marks and citations omitted).  Title V of the CAA Amendments of 1990 established an operating permit system, *see* 42 U.S.C. §§ 7661

---

[2]    Plaintiffs indicated in their Motion to Remand that "[a]ll Defendants oppose this Motion."  (Docket No. 6 at 1).  Notices of Joinder in OCC and INDSPEC's opposition to the Motion to Remand were subsequently filed by Defendants Occidental Petroleum Corporation, Beazer East, Inc., and Koppers, Inc. (Docket Nos. 15, 17, 18).

[3]    The Court briefly discusses herein the regulatory framework to the extent it is relevant to Plaintiffs' Motion to Remand.

to 7661f, and the states, in enforcing the SIPs, must "implement a mandatory permit program that limits the amounts and types of emissions that each stationary source is allowed to discharge." *Id.* (citing 42 U.S.C. §§ 7661a(d)(1), 7661c(a)).

As required by the CAA, Pennsylvania adopted a SIP, which was approved by the EPA. *See Concerned Citizens of Bridesburg v. City of Phila.*, 643 F. Supp. 713, 715 (E.D. Pa. 1986) (citing 40 C.F.R. § 52.2020). The Pennsylvania SIP incorporates the Pennsylvania Air Pollution Control Act, 35 P.S. § 4001 *et seq.* – to which Plaintiffs cite in their Complaint and in their brief in support of their Motion to Remand (Docket No. 7) – as well as other state regulations. *See id.*

Additionally, Section 112 of the CAA requires the EPA to promulgate National Emission Standards for Hazardous Air Pollutants ("NESHAPS"). *See* 42 U.S.C. § 7412; *United States v. Unitank Terminal Serv.*, 724 F. Supp. 1158, 1160 (E.D. Pa. 1989). The NESHAPS promulgated at 40 C.F.R. Parts 61 and 63 were adopted in their entirety by the Pennsylvania Department of Environmental Protection (the "PA DEP") and were incorporated into state regulations. *See* 25 Pa. Code §§ 124.3, 127.35(b). Defendants note that a NESHAP for the Miscellaneous Organic Chemical Manufacturing Industry (*see* 40 C.F.R. Part 63 Subpart G) governs the Petrolia Facility.[4] (Docket No. 14 at 7).

### B. Defendants' Removal and Plaintiffs' Motion to Remand

"Federal courts have limited jurisdiction" and "may decide only cases or controversies that the Constitution and Congress say we may decide." *Maglioli v. Alliance HC Holdings LLC*, 16 F.4th 393, 413 (3d Cir. 2021). "Any civil action brought in state court may be removed by the defendant to the federal district court in the district where such action is pending, if the district court would have original jurisdiction over the matter." *U.S. Express Lines, Ltd. v. Higgins*, 281

---

[4]    In this regard, Defendants cite to a letter (attached to their brief), dated August 17, 1994, from INDSPEC to Ms. Carol M. Browner, Administrator, U.S. Environmental Protection Agency. (Docket No. 14-4).

F.3d 383, 389 (3d Cir. 2002) (citing 28 U.S.C. § 1441(a)).  It is the removing party who bears the burden of establishing that removal of a case was proper.  *See Frederico v. Home Depot,* 507 F.3d 188, 193 (3d Cir. 2007).  Furthermore, the removing party "carries a heavy burden of showing that at all stages of the litigation the case is properly before the federal court," and "[r]emoval statutes are to be strictly construed, with all doubts to be resolved in favor of remand."  *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 162 (3d Cir. 2014) (quoting *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009)); *see* 28 U.S.C. § 1331.  In order to "bring a case within the [federal-question removal] statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action," so "a case may not be removed to federal court on the basis of a federal defense."  *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (internal quotation marks and citations omitted).

Generally, a plaintiff is considered to be the master of his complaint, and a court need not look beyond a complaint's well-pleaded allegations to determine whether it has jurisdiction over a plaintiff's claims.  *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9-10 & n.9 (1983).  However, as the parties here agree, federal jurisdiction over state law claims can exist under certain limited circumstances, including those set forth in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), and its progeny.  In *Grable*, the Supreme Court described a type of "arising under jurisdiction," where "federal-question jurisdiction will lie over state-law claims that implicate significant federal issues."  545 U.S. at 312.  This substantial federal question doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the

experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."[5]  *Id.;* *see also Schulze v. Legg Mason Wood Walker, Inc.*, 865 F. Supp. 277, 280 (W.D. Pa. 1994) (noting that this doctrine, along with complete preemption, is one of two exceptions to the well-pleaded complaint rule).

A few years later, in *Gunn v. Minton*, the Supreme Court explained that the parameters of the "special and small category" of cases in which "arising under" jurisdiction lies could be discerned by asking the question, "Does the 'state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities?'"  568 U.S. 251, 258 (2013) (quoting *Empire Healthcare Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006), and *Grable*, 545 U.S. at 314); *see James v. McManus*, Civ. Action No. 24-2232, 2024 WL 3238131, at *6 (E.D. Pa. June 27, 2024); *NLMK Pennsylvania, LLC v. United States Steel Corp.*, Civ. Action No. 2:21-cv-273, 2021 WL 3682147, at *8 (W.D. Pa. Aug. 19, 2021).  Breaking this standard down into four requirements, a court must determine whether a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn*, 568 U.S. at 258.  Where these requirements are all met, a federal court's "jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal

---

[5]        In *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, the Third Circuit summarized *Grable* as follows:

> Grable sued under state law to quiet title. Five years prior to the suit, the Internal Revenue Service ("IRS") seized Grable's land to satisfy a tax deficiency. The IRS then sold that land to the defendant. Grable argued that the IRS did so without giving sufficient notice as required by federal law. Because "whether Grable was given notice within the meaning of the federal statute is ... an *essential element* of its quiet title claim," the Supreme Court held that the issue of what notice was required under federal law was necessarily raised.

772 F.3d 158, 163 (2014) (quoting *Grable*, 545 U.S. at 315 (emphasis added)).

forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* (quoting *Grable*, 545 U.S. at 313).

In accordance with *Grable* and *Gunn*, the Third Circuit instructs that a "small number of state claims may arise under federal law if they raise 'significant federal issues.'" *Maglioli v. Alliance HC Holdings, LLC*, 16 F.4th at 413 (quoting *Grable*, 545 U.S. at 312)). The Third Circuit, like some other circuits, "considers a federal issue is 'necessarily raised' when it is a *necessary* element of one of the well-pleaded state claims." *James v. McManus*, 2024 WL 3238131, at *7 (internal quotation marks omitted) (citing *City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 706-09 (3d Cir. 2022); *Minnesota by Ellison v. American Petroleum Inst.*, 63 F.4th 703, 711 (8th Cir. 2023); and *Solomon v. St. Joseph Hosp.*, 62 F.4th 54, 64 (2d Cir. 2023)); *see also NLMK Pa., LLC*, 2021 WL 3682147, at *9 (explaining that "[f]ederal issues are necessarily raised where 'vindication of a right under state law must necessarily turn on some construction of federal law'" (quoting *Manning*, 772 F.3d at 163)). "'Under the analysis set forth in *Gunn* and *Manning*, the court must look at the elements of the state-law causes of action' to examine whether they turn on a construction of federal law." *NLMK Pa., LLC,* 2021 WL 3682147, at *9 (quoting *City of Greensburg v. Wisneski*, 75 F. Supp. 3d 688, 694 (W.D. Pa. 2015)).

In moving to remand the present case, Plaintiffs argue that their Complaint alleges only violations of state law and neither alleges nor references any violation of federal law. Plaintiffs contend that their allegations are rooted in false statements made on state forms that demonstrate Defendants' knowledge that their processes were toxic. Plaintiffs further assert that their claims involve state laws that will not require substantial interpretation by a court, and that if interpretation is required, Pennsylvania state courts are the appropriate courts to do so.

In opposing remand, Defendants contend that they removed this case because Plaintiffs' claims are predicated, at least in part, on alleged violations of federal law. Specifically, Defendants argue that the resolution of certain claims asserted by Plaintiffs, though framed as claims under state law, will require a court to interpret and apply many years' worth of federal environmental laws and their implementing regulations. In this regard, Defendants first argue that the *Grable* factors are met as to, at a minimum, Plaintiffs' two fraud-based tort claims – fraudulent concealment and fraudulent misrepresentation – which are based upon allegedly false statements made on the Petrolia Facility's Title V permit and renewal applications submitted to the PA DEP.[6] Second, Defendants contend that the *Grable* factors are also met as to Plaintiffs' claims of private nuisance and trespass because those claims are described as "continuing in nature." (Docket No. 14 at 13). Defendants argue that since the Petrolia Facility ceased operations in 2017, such allegations necessarily implicate the application of federal air pollution regulations before the facility's closure, as well as the EPA's Final Remedy for the facility post-closure. Third, Defendants assert that certain allegations in the Complaint fall within the period of time during which a Consent Decree involving the Petrolia Facility was in place, so some claims will require that a federal statute and regulations be interpreted to determine whether Defendants were in violation of that agreement.[7] In their reply, Plaintiffs argue that the *Grable* factors are not met as to any of the four claims singled out by Defendants, and that the Complaint does not allege violations of the Consent Decree cited by Defendants.

---

[6]     Defendants assert that the Court also has supplemental jurisdiction over the remaining claims in the Complaint because those claims "are 'so related' that they 'form part of the same case or controversy under Article III of the United States Constitution.'" (Docket No. 14 at 10 n.7 (quoting *Schulze v. Legg Mason Wood Walker, Inc.*, 865 F. Supp. 277, 284 (W.D. Pa. 1994)). S*ee* 28 U.S.C. § 1367.

[7]     Defendants indicate that the emissions from the Petrolia Facility at issue in this case have already been the subject of a lawsuit brought by the United States on behalf of the EPA and the PA DEP, and that the parties to that action entered into a Consent Decree as a result. (Docket No. 14 at 8 (citing *United States v. INDSPEC Chem. Corp.*, Civ. Action No. 2:15-cv-01252-JFC (W.D. Pa. Sept. 24, 2015)).

For the following reasons, the Court finds that Defendants have not demonstrated that the *Grable* factors are met as to any of Plaintiffs' state tort claims, and accordingly, the Court finds that Defendants have not met their burden of showing that the Court has subject matter jurisdiction over this case.

**C. Analysis under *Grable***

    **1. Whether Plaintiffs' Fraud-Based Claims Necessarily Raise Federal Issues**

First, Defendants argue that Plaintiffs' fraud-based state law claims, fraudulent misrepresentation and fraudulent concealment, necessarily raise federal issues. The elements of a claim for fraud under Pennsylvania law are as follows:

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*Vavro v. Albers*, No. 2:05CV321, 2006 WL 2547350, at *16 (W.D. Pa. Aug. 31, 2006) (citing *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994) (setting forth the elements of intentional misrepresentation or fraud), and *Goldstein v. Phillip Morris, Inc.*, 854 A.2d 585, 590-91 (Pa. Super. Ct. 2004) (citing the elements of fraud and noting that the allegations in that case included incidents of misrepresentation, false statements, omissions, and suppressions)). A claim for fraud based on concealment includes at least these same elements. *See American Planned Communities, Inc. v. State Farm Ins. Co.*, 28 F. Supp. 2d 964, 968 (E.D. Pa. 1998) (discussing variants of fraud and explaining that "[c]oncealment alone may create a sufficient basis for finding that a party engaged in fraud so long as the other elements of fraud are present."); *Gnagey Gas & Oil Co., Inc. v. Pennsylvania Underground Storage Tank Indemnification Fund*, 82 A.3d 485, 500-03 (Pa.

Commw. Ct. 2013) (discussing claims of fraud involving a misrepresentation in the form of a positive assertion or concealment of that which should have been disclosed).[8]

Defendants contend that, although the allegations in the Complaint are somewhat broad and vague – and are thus difficult to fit into the fraud-based claims' elements – Plaintiffs clearly plead that the injury element of such claims is their exposure to "toxic emissions spewing from the defendants' facility."  (Docket No. 14 at 11-12 (quoting Docket No. 1-1, ¶ 97)).  Moreover, Defendants assert that the "entire thrust" of the Complaint is that Plaintiffs were injured by alleged toxic emissions from the Petrolia Facility:  "This action involves injuries to Plaintiffs caused by toxic airborne emissions released from a chemical plant located in Petrolia . . . ." (*Id.* at 12 (quoting Docket No. 1-1, ¶ 32)).  Defendants argue that because such emissions are regulated by the Clean Air Act and NESHAPS, the injury element of Plaintiffs' fraud-based claims turns on resolving issues under federal law.  (*See id.*).  Defendants do not further elaborate on this point to persuade the Court, however, nor is it plainly evident to the Court why this would be so.  Accordingly, the Court does not agree that proving the element of injury in the context of Plaintiff's fraud-based claims *necessarily* turns on some construction of federal laws.

Defendants argue more fully that Plaintiffs' fraud-based claims necessarily raise federal issues because those claims' other elements all rest, at least in part, on representations allegedly made by Defendants in relation to the Petrolia Facility's Title V permit application for activities and emissions.  (Docket No. 14 at 12).  Defendants contend that, contrary to Plaintiffs' framing of

---

[8]      Additionally, Defendants suggest that, to the extent a claim for fraud based on "mere silence" might be alleged here, such claim could assert nondisclosure under Section 551 of the Restatement (Second) of Torts.  (Docket No. 14 at 11 (citing *Gnagey Gas & Oil Co., Inc. v. Pennsylvania Underground Storage Tank Indemnification Fund*, 82 A.3d 485, 500-03 (Pa. Commw. Ct. 2013), in which the Pennsylvania Commonwealth Court discussed types of fraud claims, including the ways in which Pennsylvania law recognizes a difference between active concealment and mere silence in the context of common law fraud, referencing § 550 and § 551 of the Restatement (Second) of Torts)).  Plaintiffs do not respond to Defendants' comment in this regard, and they simply argue that all elements of their causes of action for fraudulent misrepresentation and fraudulent concealment could be met without adjudicating any federal issue.  (Docket No. 21 at 3).

the allegations in the Complaint, Title V and permitted emissions are a matter of federal law under Pennsylvania's SIP.  (*See id.*).  In response,  Plaintiffs first note that, "'[c]ase law in the Third Circuit establishes that a complaint that asserts a state law claim based on the alleged violation of federal regulations is insufficient to necessarily raise a federal issue.'"  (Docket No. 21 at 2 (quoting *Boyle v. Meyer*, No. 2:21-CV-00694-CCW, 2021 WL 6051439, at *5 (W.D. Pa. Dec. 20, 2021) (internal quotation marks and citations omitted)), and citing *Kalick v. Northwest Airlines Corp.*, 372 F. App'x 317 (3d Cir. 2010)).  Plaintiffs further argue that, regardless of whether Defendants violated federal regulations, a jury could find that Defendants fraudulently misrepresented or fraudulently concealed the totality of toxic emissions under Pennsylvania common and statutory law (*e.g.,* the Pennsylvania Air Pollution Control Act is cited in the Complaint and in briefing), and that there is no need to delve into federal law at all.  (*See id.* at 3).  Additionally, Plaintiffs note that Defendants' adherence (or failure to adhere) to a federal statute or regulation may be invoked as a defense in this action, but a defense does not justify removal of the case to federal court.  (*See id.* at 2-3).

Upon consideration of the parties' arguments in this regard, the Court agrees with Plaintiffs.  Defendants argue that, to prove the fraud-based claims alleged in the Complaint, Plaintiffs will need to establish that Defendants violated the SIP, and in support of that argument Defendants point out that courts, in various different circumstances, have held SIPs to be a matter of federal law.  (Docket No. 14 at 12 (citing *Bell v. Chaswick Generating Station*, 734 F.3d 188, 190 (3d Cir. 2013) (holding that "once a SIP is approved, its requirements become federal law and are fully enforceable in federal court" (internal quotation marks and citation omitted)), *United States v. Congoleum Corp.*, 635 F. Supp. 174, 177 (E.D. Pa.) (holding that "SIP, once approved by EPA, is federal law"), *on reconsideration in part*, 646 F. Supp. 1142 (E.D. Pa. 1986), and *Atalig*

*v. Mobil Oil Mariana Islands, Inc.*, Case No. CV 10-10, 2010 WL 11553726, at *3 & n.2 (D.N. Mar. I. Aug. 31, 2010) (denying a motion to remand where the plaintiff's state tort law claims were predicated solely upon allegations of violations of the CAA and NESHAP, *but also* noting that the situation might be different if the plaintiff's claims relied upon the violation of *any* other statutes or regulations – and that federal question jurisdiction is not triggered when certain conduct could violate both state and federal laws))).

However, none of the cases cited by Defendants are instructive here since, regardless of whether an EPA-approved SIP is considered "a matter of federal law" and is enforceable in federal court, Plaintiffs are not *required* to prove that the SIP was violated in order to prove an essential element of their fraud-based state law claims.  Based on the allegations in the Complaint, Plaintiffs aver that Defendants made misrepresentations (and concealments) regarding their processes and emissions, citing the "Title V"[9] permit applications and renewal applications submitted to the PA DEP for the Petrolia Facility.  (Docket No. 1-1 ¶¶ 72, 103).  Although evidence of such misrepresentations might also show that the SIP was violated, proof of the SIP violation is not a necessary element of Plaintiff's fraud-based claims.  Defendants contend that federal law (citing the CAA, NESHAP, and SIP) *must* be applied and interpreted for Plaintiffs to prevail on their fraud-based claims, but that is simply not so.[10]  As Plaintiffs assert, a jury could find that Defendants adhered to federal requirements, yet still find that Defendants fraudulently misrepresented or fraudulently concealed the totality and nature of regulated or unregulated toxic

---

[9]    The Complaint alleges that Defendants filed false answers on "Title V" permit applications, or intentionally deceived the PA DEP in their "Title V" applications, sometimes offsetting the term "Title V" with quotation marks when referring to statements made on the state permit application forms submitted to the PA DEP, a state agency. (Docket No. 1-1, ¶¶ 80, 103).  The Court finds that Plaintiffs' reference to "Title V" in this manner within such allegations is not sufficient to confer federal question jurisdiction over this matter.

[10]    Notably, Defendants do not argue that Plaintiffs' claims are completely preempted here by federal law, stating that "federal questions are presented on the face of the complaint without regard to complete preemption." (Docket No. 14 at 6 n.3).

emissions under Pennsylvania law, that one or more of those emissions polluted their property or persons without permission, and that those emissions were a proximate cause of harm they sustained.  The Court agrees that "state law claims based on conduct that is also regulated by federal law does not *necessarily* give rise to federal question jurisdiction," so a complaint can refer to both federal and state regulations, while alleging claims under state law.  *McGuire v. Palmerton Hosp.*, Civ. Action No. 12-1718, 2012 WL 2362488, at *3 (E.D. Pa. June 20, 2012) (emphasis added); *see also Hirshbach v. NVE Bank*, 496 F. Supp. 2d 451, 455 (D.N.J. 2007) ("A state law cause of action does not give rise to a substantial and disputed question of federal law simply because it is predicated on conduct regulated by federal law.").

As the elements of Plaintiffs' fraud-based claims can be established without adjudicating any federal issue, Defendants' argument – that a jury could not find that Defendants fraudulently misrepresented (or fraudulently concealed) the Petrolia Facility's toxic emissions under Pennsylvania law, without necessarily delving into federal law to determine that the SIP was violated here – is not persuasive.  Defendants may certainly choose to raise their obligations under and/or their compliance with federal laws in defending against Plaintiffs' claims, but, as previously noted, the existence of a defense involving federal law may not be the basis for removing an action to federal court.  *See Rivet v. Regions Bank of La.*, 522 U.S. at 475; *see also MHA LLC v. HealthFirst, Inc.*, 629 F. App'x 409, 413 (3d Cir. 2015) (explaining that the fact that a federal law may "'shape or even limit the remedy that Plaintiff may obtain' does not mean that federal law is a necessary component of the cause of action" (quoting *Veneruso v. Mount Vernon Neighborhood Health Ctr.*, 933 F. Supp. 2d 613, 626 (S.D.N.Y. 2013), *aff'd* 586 F. App'x 604 (2d Cir. 2014))).

The Court therefore concludes that a determination of Plaintiffs' fraudulent misrepresentation and fraudulent concealment claims does not necessarily rely on evaluating

whether alleged statements made by Defendants on the Petrolia Facility's "Title V" permit and renewal application forms violated federal law, and thus such claims do not necessarily turn on a construction of federal law.  Accordingly, the Court finds that Defendants have not met their burden of showing that Plaintiffs' fraud-based claims necessarily raise federal issues, and thus Defendants have not shown that the first *Grable* factor is met as to such claims.

### 2. Whether Plaintiffs' Claims for Private Nuisance and Trespass Necessarily Raise Federal Issues

Second, Defendants argue that Plaintiffs' private nuisance and trespass claims necessarily raise federal issues.  In arguing that the Court has subject matter jurisdiction over such claims, however, Defendants do not specifically address the elements of those claims under Pennsylvania law.  Instead, Defendants argue broadly that such claims are alleged in the Complaint to be "continuing in nature," which "necessarily implicates not only questions of the application of federal hazardous air pollution regulations to the Petrolia Facility's operations before its closure, but also the EPA's Final Remedy for the Petrolia Facility regarding post-closure management of the Petrolia Facility." (Docket No. 14 at 13).  Stated differently, Defendants contend that questions of federal law are raised in such claims:  "for pre-closure activities," which entails the question "whether Defendants were compliant with the requirements of EPA regulations regarding hazardous air emissions"; and "for post-closure activities," which entails "whether the EPA's Final Remedy for site remediation involving the Petrolia Facility accomplishes its intended objectives for the Petrolia Facility."  (*Id.* at 3).

In response to these arguments, Plaintiffs argue again that, to prove their claims, they need only prove the elements required under Pennsylvania law for each count alleged in the Complaint, and that resolution of these additional issues raised by Defendants is not required.  (Docket No. 21 at 2).  Plaintiffs also assert that "Defendants' adherence or failure to adhere to any federal statute

or [agreement, etc.] is at best a defense and in no way creates a necessary federal issue as required under *Grable* element #1." (*Id.* at 3). Plaintiffs argue that the items that Defendants raise (including a "Corrective Action Plan"[11] and the "Enhanced Leak Detection And Repair Program . . . attached to the Consent Decree" at Appendix A[12] – which Defendants assert "will necessarily require the application of federal law to determine compliance" (Docket No. 14 at 13-15)) – are only intended to confuse and mislead the Court. (Docket No. 21 at 4-5). Plaintiffs contend that they do not allege in the Complaint that any plan, agreement, or federal statute was violated, nor is it necessary to establish that such a violation in order to prove any element of their private nuisance or trespass claims under state law.

Turning to consideration of the elements of these claims under Pennsylvania law, a "private nuisance exists when a person's conduct invades 'another's interest in the private use and enjoyment of land,' and that invasion is either intentional and unreasonable or unintentional but negligent." *Baptiste v. Bethlehem Landfill Co.*, 965 F.3d 214, 222-23 (3d Cir. 2020) (quoting *Youst v. Kecks Food Serv., Inc.*, 94 A.3d 1057, 1072 (Pa. Super Ct. 2014) (citing, at length, the Restatement (Second) of Torts § 822)). Trespass under Pennsylvania law "is a strict liability tort, 'both exceptionally simple and exceptionally rigorous,' *Prosser on Torts* at 63 (West, 4th ed. 1971)," and is defined as an "'unprivileged, intentional intrusion upon land in possession of another.'" *Boring v. Google Inc.*, 362 F. App'x 273, 280 (3d Cir. 2010) (quoting *Graham Oil Co. v. BP Oil Co.,* 885 F. Supp. 716, 725 (W.D. Pa. 1994) (citing *Kopka v. Bell Tel. Co.,* 91 A.2d 232, 235 (Pa. 1952))); *see also Muhammad v. United States*, 884 F. Supp. 2d 306, 316 (E.D. Pa. 2012)

---

[11]    Defendants state that after the Petrolia Facility ceased operations in 2017, it was subject to a Corrective Action Program of the EPA under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq.*, which "creates a framework for the proper management of hazardous and non-hazardous solid waste." (Docket No. 14 at 7-8, 14).

[12]    Docket No. 14-2, App. A.

("Because a defendant need not have the purpose or intent of committing an unlawful trespass, trespass is appropriately defined as a strict liability tort.").

The Court agrees with Plaintiffs that their claims of private nuisance and trespass do not necessarily raise the federal issues cited by Defendants. Defendants argue generally (without directly addressing the claims' elements) that, to prove these claims, a factfinder will have to consider both whether Defendants were compliant with the requirements of EPA regulations regarding hazardous air emissions, and whether the EPA's Final Remedy for site remediation involving the Petrolia Facility accomplishes its intended objectives for that facility. The Court disagrees. Here again, Plaintiffs do not allege any violation of a Corrective Action Plan or the Enhanced Leak Detection And Repair Program, cited by Defendants, but in proving their private nuisance and trespass claims, evidence might also show that Defendants did not comply with the relevant EPA regulations or that the site remediation for the Petrolia Facility has not accomplished its intended objectives. However, proof of such non-compliance or failure of the site remediation is not a required element of such claims. Also, Defendants may choose to show that they did comply with any relevant agreements, regulations, or site remediation plans in defending against Plaintiffs' claims, but, as previously noted, a defense does not justify a case's removal to federal court, nor does the fact that a federal law may shape or limit a remedy mean that the law is a necessary component of a cause of action. *See MHA LLC*, 629 F. App'x at 413. Accordingly, the Court finds that Defendants have not shown that proving Plaintiffs' private nuisance or trespass claims necessarily raises federal issues, and thus Defendants have not met their burden of showing that the first *Grable* factor is met as to such claims.

**3.  Whether Claims of Conduct in Violation of the Consent Decree Necessarily Raise Federal Issues**

Last, Defendants note, somewhat generally, that the Complaint alleges several times – among items in a lengthy list of alleged process and emissions failures – that Defendants "failed to implement adequate leak detection protocols and implement adequate repair requirements." (Docket No. 14 at 14 (quoting Docket No. 1-1, ¶ 59)).  Defendants argue that allegations of such conduct fall within the period of time during which the Consent Decree was in place, and that, because any such conduct is "directly covered by" the Consent Decree, "these claims require an interpretation of federal statute and regulations as to whether Defendants were in violation of the Consent Decree." (*Id.*).  In response, Plaintiffs argue that they do not allege any violation of the Consent Decree, they were not parties to the Consent Decree, and to the extent Defendants wish to raise the issue of the Consent Decree (which is not in the Complaint), it is nothing more than a defense.  (Docket No. 21 at 4-7).

The Court agrees with Plaintiffs.  First, Defendants do not link this argument regarding the Consent Decree to any specific claim in the Complaint, so, although it is Defendants' burden to prove that removal is proper, it is unclear to the Court to which of the sixteen Counts this argument might apply.  Defendants also do not explain why Plaintiffs would have to show that the Consent Decree was violated in order to prove any of their claims.  Moreover, nowhere in the Complaint do Plaintiffs allege that Defendants violated the Consent Decree, nor does the Complaint rely upon the Consent Decree, and a defendant may not simply inject federal issues that are not in the complaint.  *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 399 (1987) ("[A] *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated.").  Here again, while Defendants may choose to offer evidence of

compliance with the Consent Decree as a defense to certain claims in this matter, such a defense is not sufficient to invoke this Court's federal jurisdiction over Plaintiffs' state law claims. Accordingly, the Court finds that Defendants have not shown that Plaintiffs' allegations of conduct falling within the period during which the Consent Decree was in place necessarily raise federal issues.[13]

### 4.  <u>Whether the Remaining *Grable* Elements Are Met Here</u>

Even if the Court were to find that Plaintiffs' claims do necessarily raise federal issues – which it does not – Defendants have still not shown a basis upon which the Court could find that the remaining *Grable* factors are met here.  In considering whether federal issues are "actually disputed and substantial," the second and third *Grable* elements, collectively, "the Supreme Court has distinguished cases such as *Grable* that present a 'nearly pure issue of law' that would govern numerous other cases, from those that are 'fact-bound and situation-specific.'"  *MHA LLC*, 629 F. App'x at 413 (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700-01 (2006)); *Boyle v. Meyer*, No. 2:21-CV-00694-CCW, 2021 WL 6051439, at *5 (W.D. Pa. Dec. 20, 2021); *see also Draper v. Center for Organ Recovery & Educ.*, No. 2:10-cv-181, 2010 WL 1444860, at *3 (W.D. Pa. Apr. 8, 2010) (noting that under *Grable* and later cases, including *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804 (1986), "a case is removable only if it presents a context-free inquiry into the meaning of a federal law").  Of the federal issues that Defendants suggest are necessarily raised in this case – whether Defendants violated a federal law that they cite; whether Defendants violated EPA regulations regarding air emissions or whether

---

[13]    Additionally, Defendants note that since "the Complaint is so expansive and vague, it is not possible to identify every federal question implicated," and that "once the allegations are more focused, additional federal questions will likely arise."  (Docket No. 14 at 3 n.2).  However, in ruling on Plaintiff's motion to remand, the Court cannot rely on unidentified federal questions that are likely to arise from possible amended allegations, because a complaint must be examined as it exists at the time of removal in order to determine whether it states a federal claim. *See Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939).

the Final Remedy for site remediation was adequate; or whether Defendants violated a Consent

Decree – all such issues involve "a 'fact-bound and situation specific' inquiry that does not present

a 'substantial' question of federal law that is significant to the federal system as opposed to only

the parties." *Boyle*, 2021 WL 6051439, at *5 (quoting *MHA LLC*, 629 F. App'x at 413, and citing

*Benjamin v. JBS S.A.*, 516 F. Supp. 3d 463, 470 (E.D. Pa. 2021) (noting that citation to OSHA and

CDC guidelines, and how they applied to the defendant's conduct, did not show that any federal

issue was actually disputed)).

        As to the second *Grable* element specifically, whether this case presents a federal issue

that is "actually disputed," Defendants cite generally to federal laws including the CAA and related

regulations (as well as the Consent Decree and Corrective Action Plan regarding the Petrolia

Facility), but Defendants have not elaborated on any specific language of a federal statute,

regulation, or other federal requirement that is in dispute. *See MHA LLC*, 629 F. App'x at 414

("The parties have not identified a dispute over the meaning of particular statutory text; rather [the

defendant] generally avers that the parties disagree over the application of the [statute] to their

situation."); *see Benjamin*, 516 F. Supp. 3d at 470. Thus, Defendants have not presented the Court

"'with a discrete federal issue that is dispositive of the case and would be controlling in numerous

other cases.'" *Benjamin*, 516 F. Supp. 3d at 470 (quoting *MHA LLC*, 629 F. App'x at 414 (internal

quotation marks omitted) (citing *Empire Healthchoice*, 547 U.S. at 700))). The Court therefore

finds that Defendants have not shown that a federal issue is actually disputed here. *See MHA LLC*,

629 F. App'x at 414; *Benjamin*, 516 F. Supp. 3d at 470.

        As to the third *Grable* element specifically, Defendants argue broadly that this case

presents a "substantial" federal issue because the federal government has an interest in the

authority, operation, and enforcement of federal emissions authorizations and standards and in the

enforcement of Pennsylvania's SIP, as well as an interest in the authority to create and force Corrective Actions Programs to ensure proper remediation of chemical manufacturing facilities. (Docket No. 14 at 16-17).  In cases under *Grable* jurisdiction, however, a suit generally "call[s] into question the validity of a federal statute or the conduct of a federal actor." *MHA LLC*, 629 F. App'x at 414.  "The prototypical case of *Grable* jurisdiction is one in which the federal government itself seeks access to a federal forum, an action of the federal government must be adjudicated, or where the validity of a federal statute is in question." *Id.* at 413 n.6 (citing *Gunn*, 568 U.S. at 260-61, and *Grable*, 545 U.S. at 312).  In contrast, "if the issue is significant only to the parties, rather than the 'federal system,' it is not a substantial federal issue." *Benjamin*, 516 F. Supp. 3d at 470 (quoting *MHA LLC*, 629 F. App'x at 413 (additional internal citations omitted)).  In this case, "the federal government is not seeking access to a federal forum, no action of the federal government is being adjudicated, and there is no question about the validity of a federal statute." *McLaughlin v. Bayer Essure, Inc.*, Civ. Action No. 14-7315, 2018 WL 3535142, at *4 (E.D. Pa. July 23, 2018). This case is thus not a prototypical case of *Grable* jurisdiction.  Rather, because resolution of this matter requires a fact-specific assessment of Defendants' conduct, this case is "fact-bound and situation-specific" and does not present a "pure issue of law." *Empire Healthchoice*, 547 U.S. at 700-01.  The Court therefore finds that Defendants have failed to meet their burden of establishing that this case presents a "substantial" federal issue, the third *Grable* factor.

Finally, the fourth factor necessary to establish federal jurisdiction under *Grable* requires Defendants "to show that [a] Plaintiff's state law claims are 'capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" *Benjamin*, 516 F. Supp. 3d at 471 (quoting *Manning*, 772 F.3d at 163).  Defendants argue that the Court finding federal question jurisdiction here will not disrupt the federal-state balance and present an "opening-the-

litigation-floodgates" problem because this case involves more than just typical negligence claims, but also fraud claims and allegations of continuing conduct.  (Docket No. 14 at 17-18).  Defendants also argue that the federal-state balance will not be upset here because the CAA permits citizen suits to be brought in federal district courts.  (*See id.* at 18).

However, as Plaintiffs point out, their Complaint does not allege claims under the CAA, yet Defendants' theory would require the Court to exercise federal jurisdiction over a case that is filed in state court on the basis of state laws, simply because the alleged bad actor was subject to federal laws.  (Docket No. 21 at 9-10).  Regardless of whether the CAA permits citizen suits to be brought in federal court, Plaintiffs do not bring such claims.  Rather, Plaintiffs allege a number of Pennsylvania tort law claims, including negligence, fraudulent misrepresentation, fraudulent concealment, private nuisance, and trespass.  And regardless of whether the Complaint is unusual because it raises fraud claims and would not "open the litigation floodgates" to similar types of cases, the Complaint clearly asserts "run-of-the-mill state tort claims" that "are well within the purview of the state court."  *Benjamin*, 516 F. Supp. 3d at 471 (quoting *Yellen v. Teledyne Cont'l Motors, Inc.*, 832 F. Supp. 2d 490, 499 (E.D. Pa. 2011)).  Accordingly, this case "'fits comfortably within the state courts' realm of expertise.'"  *See id.* (quoting *Yellen*, 832 F. Supp. 2d at 499).  "[T]o find 'otherwise would risk disrupting the balance between federal and state courts.'"  *Boyle*, 2021 WL 6051439, at *6 (quoting *Benjamin*, 516 F. Supp. 3d at 471, and citing *McGuire v. Palmerton Hosp.*, Civ. Action No. 12-1718, 2012 WL 2362488 (E.D. Pa. June 20, 2012)).  The Court finds that Defendants have not shown that Plaintiffs' state law claims are capable of resolution in this Court without disrupting the federal-state balance approved by Congress, and thus Defendants have not met their burden of establishing the fourth *Grable* factor.

### III.  <u>CONCLUSION</u>

Accordingly, for the reasons stated, The Court finds that it does not have subject matter jurisdiction over this case because Defendants have not met their burden of showing that the four *Grable* factors are met with regard to any of Plaintiffs' state law claims.  Plaintiffs' Motion to Remand will therefore be granted, and this case will be remanded to the Court of Common Pleas of Butler County, Pennsylvania.

An appropriate Order follows.


Dated:  March 31, 2025                                     *s/ W. Scott Hardy*
                                                                          W. Scott Hardy
                                                                          United States District Judge

cc/ecf:  All counsel of record

22